IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KENNETH DAVID,

          Plaintiff,

    v.

JO ANNE B. BARNHART,
Commissioner of Social Security

          Defendant.

No. 05-1243-MO

OPINION AND ORDER

**MOSMAN, J.,**

      Plaintiff Kenneth David brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for social security disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act.  The court has jurisdiction under 42 U.S.C. § 405(g).  The Commissioner's decision is REVERSED, and the case is REMANDED FOR AN IMMEDIATE AWARD OF BENEFITS pursuant to sentence four of 42 U.S.C. § 405(g).

PAGE 1 - OPINION AND ORDER

## BACKGROUND

Mr. David was born in 1955 and attended special education classes at Glide Elementary School. Tr.[1] at 20, 48. Mr. David has prior relevant work experience as a dryer feeder and car washer and filed for DIB on May 31, 2002. Tr. at 13c, 51-55. Mr. David's application was denied initially and on reconsideration. Tr. at 13c. On January 26, 2005, after a hearing, an administrative law judge ("ALJ"), applying the required five-step analysis, found Mr. David was not entitled to DIB. The Appeals Council denied Mr. David's request for review of the hearing decision. Tr. at 6-8. This appeal followed.

## DISCUSSION

The parties agree the ALJ's decision should be reversed and the case should be remanded. However, they disagree whether the court should remand for further proceedings or for the immediate award of benefits. At the heart of this disagreement is the ALJ's step-three determination that Mr. David's impairments do not meet or equal Listings 12.05(B) and (C).[2] The Commissioner contends remand for further proceedings is necessary to determine whether Mr. David's deficits in adaptive functioning began prior to age 22 as required by Listing 12.05(B) and whether Mr. David has additional severe impairments as required by Listing 12.05(C). Mr. David argues remand for an immediate award of benefits is appropriate because the ALJ's decision that Mr. David's combined impairments did not met or equal Listings 12.05(B) and (C) is based on incorrect legal standards and is not supported by substantial evidence.

---

[1] "Tr." refers to the official transcript of record submitted by the Commissioner on February 7, 2006.

[2] Listings 12.05(B) and (C) are listed impairments, also called Listings, enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). At step three, if the ALJ determines a claimant's impairments meet or equal a Listing, the Commissioner will find the claimant disabled without completing the remaining steps in the sequence. These listings are so severe as to preclude substantial gainful activity. *Bowen v. Yuckert*, 482 U.S. at 137, 141 (1987); 20 C.F.R. § 404.1520(a)(4)(iii), (d).

The decision whether to remand for further proceedings or for an immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The court's decision turns on the utility of further proceedings. *Id.* at 1179. A remand for an immediate award of benefits is appropriate when no useful purpose would be served by further proceedings or when the record has been fully developed and a review of the record reveals there is insufficient evidence to support the ALJ's decision. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).

_____Here, at step three, the ALJ found Mr. David has

> low IQ scores *without* a history of adaptive functioning deficits, an impairment which is 'severe' within the meaning of the Regulations, but not 'severe' enough to meet or medically equal, either singly or in combination with other severe or nonsevere impairments, the requirements of . . . 12.05.

Tr. at 13i, 13p. In reaching this decision, the ALJ relied on the Disability Determination Services' ("DDS") conclusion that Mr. David "does not meet the criteria for mental retardation" under Listing 12.05. Tr. at 13n. Additionally, the ALJ quoted DDS for the appropriate application of Listing 12.05 as, "We are instructed to consider adaptive function, not just IQ scores, and we are instructed that an IQ score must be established as of age 18. " *Id.* The court finds the ALJ's step-three determination is in error.

Listing 12.05 for mental retardation states:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Listing 12.05(B) requires "[a] valid verbal, performance, or full scale IQ of 59 or less." *Id.* Similarly, Listing 12.05(C) requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment

imposing an additional and significant work-related limitation of function." *Id.* It is important to note that Listing 12.05(B) only requires an IQ score of 59 or less, whereas Listing 12.05(C), in addition to a particular range in IQ scores, requires other mental impairments. A claimant need not satisfy both Listing 12.05(B) and (C) to met the required level of severity to establish mental retardation; satisfaction of either Listing is enough. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Also, evidence must demonstrate or support the onset of this disorder by age 22, not by age 18, as the ALJ incorrectly noted. *See id.*; 65 Fed. Reg. 50746, 50772 (Aug. 21, 2000) (Listing 12.05 was never intended to require intelligence testing prior to age 18).

In this case, the record provides Mr. David obtained the following scores on the Wechsler Adult Intelligence Scale - Third Edition ("WAIS-III"): verbal IQ score of 56; performance IQ score of 68; and full scale IQ of 58.[3] Dr. William A. McConochie, an examining psychologist, administered the IQ test in March 2002 and commented that Mr. David's IQ scores were valid and consistent with his developmental history and his degree of functional limitation as required by 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(a). Although Mr. David was 46 years old at the time the WAIS-III was administered, Dr. McConochie opined his full scale IQ of 58 was "probably characteristic of his lifelong level of intellectual functioning and are consistent with his background." Dr. McConochie's opinion is consistent with the Commissioner's interpretation of Listing 12.05's requirement that the impairment "initially manifested during the developmental period" to include

> the common clinical practice of inferring a diagnosis of mental retardation when the longitudinal history and evidence of current functioning demonstrate that the impairment existed before the end of the developmental period.

65 Fed. Reg. 50746, 50772.

---

[3]"In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(c). As such, the court uses Mr. David's full scale IQ score of 58.

Other courts have similarly held that mental retardation is not a condition that improves as an affected person ages and that a claimant's IQ is presumed to remain constant over time absent any evidence showing a change in the claimant's intelligence functioning. *See, e.g., Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001) (absent sudden trauma that can cause retardation, a claimant's IQ is presumed to remain constant throughout his life); *Muncy v. Apfel*, 247 F.3d 728, 735 (8th Cir. 2001) (a person's IQ is presumed to remain stable over time absent contrary evidence); *Luckey v. United States Dep't of Health & Human Servs.*, 890 F.2d 666, 668-69 (4th Cir. 1989) (absent a showing of change in intelligence functioning, it is presumed a claimant's IQ remains constant); *Guzman v. Bowen*, 801 F.2d 273, 275 (7th Cir. 1986) (a claimant's low IQ was during the onset of disability in 1979 rather than just when first tested in 1982); *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985) (an IQ test taken after the insured period correctly reflects a claimant's IQ during the insured period).

In *Luckey*, the central issue on appeal was whether substantial evidence supported the Secretary's determination that the claimant's impairment did not meet the Listing for mental retardation. 890 F.2d at 668. The Secretary argued the claimant's "low IQ was not manifested during his developmental years as evidenced by the fact that [he] worked for 23 years." *Id.* The Fourth Circuit disagreed. The court found there was no evidence that the claimant's IQ had changed. *Id.* To the contrary, "the evidence that [the claimant] could barely read or write was 'a clear manifestation of mental retardation occurring before age twenty-two.'" *Id.* at 668-69 (quoting *Turner v. Bowen*, 856 F.2d 695, 699 (4th Cir. 1988). Following *Branham*, the court held that in the absence of a change in the claimant's intelligence functioning, "it must be assumed that the claimant's IQ had remained relatively constant." *Id.* at 668. The court reasoned "there are many possible reasons why an adult would not have obtained an IQ test early in life and the absence of an IQ test during the developmental years does not preclude a finding of mental retardation predating age 22." *Id.* at 668 (citing *Branham*, 775 F.2d at 1274.).

PAGE 5 - OPINION AND ORDER

Additionally, the *Luckey* court found the Secretary may not rely on the claimant's previous work history to show non-disability under Listing 12.05 where the Listing's requirements are met. *Id.* at 669 (citing *Murphy v. Brown*, 810 F.2d 433, 438 (4th Cir. 1987) ("When a claimant for benefits satisfies the disability listings, benefits are due notwithstanding any prior efforts of the claimant to work despite the handicap.")).

Here, as in *Luckey*, there is no evidence to suggest Mr. David's IQ or intellectual functioning has changed. It is, therefore, presumed Mr. David's IQ of 58 has remained constant, dating back to his developmental years. *See Luckey*, 890 F.2d at 668-69. In fact, the evidence shows Mr. David can barely read and write and, as a result, dropped out of school. Mr. David relies on his wife to manage the household finances, file insurance forms, and shop. At work, Mr. David had to rely on coworkers to fill out forms and to read safety procedures. These not only show Mr. David's IQ has remained constant but also demonstrate a history of adaptive functioning deficits. *See id.* As such, the absence of an IQ test during Mr. David's developmental years does not preclude a finding of mental retardation predating age 22. *See id.* Mr. David's IQ of 58 clearly meets the requirements of Listing 12.05(B), and the ALJ may not rely on his previous work history to preclude this finding. *See id.*

While an ALJ may disregard a claimant's IQ score when it is derived from a one-time examination by a non-treating psychologist if the score is inconsistent with the claimant's daily activities, *see Clark v. Apfel*, 141 F.3d 1253, 1255-56 (8th Cir. 1998), such is not the case here. As previously mentioned, Dr. McConochie was an examining psychologist, and the ALJ did not choose to disregard Mr. David's low IQ scores. Regarding Mr. David's IQ score or mental impairments, the ALJ states only, "it appears that there is a distinct possibility that [Mr. David's] intellectual capacity has been underestimated at least to some degree." If the ALJ believed the evidence regarding Mr. David's IQ scores was lacking, inadequate, or ambiguous, she had a duty to fully and fairly develop the record and to resolve any doubts regarding the accuracy of his IQ score by conducting the appropriate inquiry before rendering a decision. *See Tonapetyan v.*

PAGE 6 - OPINION AND ORDER

*Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  Remand was not intended for that purpose.

As it stands, the record has been fully developed and substantial evidence demonstrates Mr. David's impairments meet or equal Listing 12.05(B).  Remand for further proceedings would serve no useful purpose.  *See Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).  Because Mr. David is entitled to DIB under Listing 12.05(B), it is unnecessary for the court to address whether the ALJ also erred in her Listing 12.05(C) determination.

## <u>CONCLUSION</u>

The Commissioner's final decision that Mr. David is not entitled to DIB under Title II of the Social Security Act is REVERSED, and the case is REMANDED  REMANDED FOR AN IMMEDIATE AWARD OF BENEFITS pursuant to sentence four of  of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this  21st  day of December, 2006.


/s/ Michael W. Mosman

MICHAEL W. MOSMAN
United States District Court


PAGE 7 - OPINION AND ORDER